**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | | |
|---|---|---|
| In re: | * | |
| FT. HOWARD DEVELOPMENT, LLC, | * | Case No. 18-18061 |
| | | (Chapter 11 Involuntary) |
| | * | |
| Alleged Debtor. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**EMERGENCY MOTION TO STAY DISCOVERY OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER ON NOTICES OF DEPOSITION AND REQUESTS FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY RECEIVER; SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER AND TO DENY DAMAGES AND SANCTIONS**

David L. Woody ("Woody"), Carlos Yeargin and Trinity Protection Services, Inc. ("Trinity") (collectively, the "Petitioning Creditors") and Ronald J. Drescher and Drescher & Associates, P.A. (collectively, "Counsel"), by undersigned counsel, hereby move this honorable court to stay discovery propounded in this case or, in the alternative, for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, incorporated into this contested matter by Rule 7026 of the Federal Rules of Bankruptcy Procedure, on the following grounds:

Based on the narrowly defined role of custodians established by Section 543 of the Bankruptcy Code, the Petitioning Creditors have made compelling arguments that all requests for damages in this case should be denied, the state court receiver, Gray and Associates, LLC (the "Receiver"), has propounded harassing and intrusive discovery in its efforts to obtain a judgment of approximately $350,000 against Counsel and Petitioning Creditors for doing two months' work on this case. The need for emergency relief arises due to the notices of discovery the Receiver has served, specifically the Notice of Deposition of Counsel scheduled for

November 1, 2018, less than two weeks after the date of this Motion. Based on the content of other discovery the Receiver has served upon the parties, further described below, it is apparent that opposing counsel for the Receiver, Todd Brooks and Whiteford, Taylor and Preston ("WTP"), intend to harass, annoy, embarrass, oppress and subject Counsel and the other Petitioning Creditors to undue expense, and they should not be permitted to harass Counsel in this manner without prior notice and opportunity to be heard. The grounds for this motion are:

1. Discovery should be stayed until this Court addresses the legal issues that have been previously raised by the Petitioning Creditors regarding the powers of the Receiver under Section 543 of the Bankruptcy Code
2. Trinity, Woody and Yeargin have already been deposed in this case and therefore the Receiver must obtain leave of court to take their deposition under Rule 30(a)(2)(A)(ii) of the Federal Rules of Civil Procedure, incorporated into this Contested Matter by Rules 7030 and 9014 of the Federal Rules of Bankruptcy Procedure, if the parties do not stipulate to these depositions, which they do not
3. The Receiver as a "custodian" defined in Section 101(10) of the Bankruptcy Code, does not have standing to obtain any of the sanctions it seeks and therefore the discovery requests are not likely to lead to the discovery of admissible evidence
4. The Receiver has not complied with his mandatory obligations as a custodian and fiduciary and otherwise has unclean hands and therefore must be denied both discovery and sanctions
5. The discovery requests are needlessly intrusive and vexatious
6. If discovery is permitted, it should be limited in duration and scope

The Discovery Requests

Notwithstanding the pendency of the Motion to Reconsider and the Motion to Deny the Receiver Fees, which this Court has not yet resolved, on October 17, 2018 the Receiver served the following discovery requests (collectively, "Discovery Requests"):

(1) Receiver's Notice of [Nov. 20] Deposition of Carlos Yeargin;
(2) Receiver's Requests for Production of Documents by Carlos Yeargin;
(3) Receiver's Notice of [Nov. 20] Deposition of David L. Woody;
(4) Receiver's Requests for Production of Documents by David L. Woody;
(5) Receiver's Notice of [Nov. 20] Deposition of Trinity Protection Services, Inc.;

2

(6)   Receiver's Requests for Production of Documents by Trinity Protection Services, Inc.;
(7)   Receiver's Notice of [Nov. 1] Deposition of Ronald J. Drescher;
(8)  Receiver's Requests for Production of Documents by Ronald J. Drescher;
(9) Receiver's Notice of [Nov. 1] Deposition of Drescher & Associates, P.A.;
(10) Receiver's Requests for Production of Documents by Drescher & Associates, P.A.

True and accurate copies of all Discovery Requests are attached here to collectively as Exhibit "A".

In an obvious attempt to harass, the Discovery Requests seek from Counsel the following documents:

> 1. All Documents concerning the reference on page 43 of the Opposition about "'the least severe sanction' that would adequately deter any future violation of Rule 9011 by counsel," including, without limitation, the following:
>
> **a. All of Your Financial Statements covering the period from January 1, 2014 to the present;**
>
> **b. All of Your federal and state tax returns covering the period beginning with tax year 2014 to the present (in addition to any corresponding or related attachments, schedules, worksheets and amendments);**
>
> **c. Documents sufficient to show:**
>
> **i. Your current assets and liabilities;**
>
> **ii. All distributions, salary, wages and any other form of payments, transfers or income that You have received from Drescher & Associates, P.A. over the period from January 1, 2014 to the present; and**
>
> **iii. All distributions, salary, wages and any other form of payments, transfers or income that You have received (other than from Drescher & Associates, P.A.) over the period from January 1, 2014 to the present; and**
>
> **d. Documents sufficient to show Your ownership interests (whether direct or indirect) in any incorporated or unincorporated businesses, entities or enterprises of any kind, in addition to the value any such ownership interests.**
>
> **2. Your professional liability insurance policies.**
>
> 3. All Documents and Communications referenced and/or identified in the Opposition.
> 4. All Documents and Communications upon which you will, or intend to, rely at the Hearing.

3

(Emphasis added) The Receiver has similarly sought discovery of tax returns, statement of assets and other intrusive financial information for the Petitioning Creditors from 2014 to the present. *See* Exhibit A, pages 9, 15, 22, 28, 35, 45 and 55.

For the reasons set forth below, Petitioning Creditors and Counsel request that this court grant a protective order against these intrusive Discovery Requests.

> A. ***Discovery Should Not Be Permitted Before This Court Addresses The Legal Issues That Have Been Previously Raised By The Petitioning Creditors Regarding The Powers Of The Receiver Under Section 543 Of The Bankruptcy Code Or Before This Court Has Found That Sanctions Are Appropriate***

It has long been recognized that trial courts are vested with broad discretion to manage the conduct of discovery. *See, e.g., Brennan v. Local Union No. 639, Int'l Bhd. of Teamsters Chauffers, Warehousemen and Helpers*, 161 U.S. App. D.C. 173, 494 F.2d 1092, 1100 (D.C. Cir. 1974). Entry of an order staying discovery pending determination of dispositive motions is an appropriate exercise of the court's discretion because a trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined. *See Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) (citations omitted); *Ladd v. Equicredit Corp. of Am.*, 2001 U.S. Dist. LEXIS 2256, No. CIV.A.00-2688, 2001 WL 175236, at *1 (E.D. La. Feb. 21, 2001); *White v. Fraternal Order of Police*, 285 U.S. App. D.C. 273, 909 F.2d 512, 517 (D.C. Cir. 1990).

A stay of discovery pending the determination of a dispositive motion "is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Coastal States Gas Corp. v. Department of Energy, 84 F.R.D. 278, 282 (D. Del. 1979)* (citations omitted).

Petitioning Creditors have filed their memorandum detailing the rights and obligations of a custodian who has been superseded by the filing of a petition in bankruptcy. These rights and

4

obligations are determined under Section 543 of the Bankruptcy Code. That section, as well as the definitional sections of Sections 101(10) (custodian) and 101(13) (debtor) provide a bright line division between the rights/obligations of a custodian and the debtor. A custodian is not and can never be "the debtor".

In addition to the cases and authorities already cited, the well reasoned case of *In re: Rimstat*, 193 B.R. 499 (Bankr. N.D. IN 1996) made plain that the rights of a custodian are limited to those *expressly stated in the bankruptcy code* and therefore a state court receiver does not even have the right as a "party in interest" to seek dismissal of a Chapter 11 case under Section 1112 of the Bankruptcy Code.

In that case the court reasoned:

> Section 1109(b) does not specifically define who it is that may be a party in interest with regard to Chapter 11 cases. It does, however, give illustrative examples which include the debtor, the bankruptcy trustee, committees, creditors, and equity security holders of the debtor. A pre-petition receiver or custodian, see 11 U.S.C. § 101(11), is not included. Given the illustrative nature of the list contained in § 1109(b), a receiver's exclusion from it is not necessarily determinative of the issue. *In re Ionosphere Clubs, Inc.*, 101 Bankr. 844, 849 (Bankr. S.D.N.Y. 1989). **Nonetheless, since Congress was well-aware that bankruptcy proceedings could be initiated following the appointment of a custodian see 11 U.S.C. § 303(h)(2), and specifically identified the rights and obligations of such an entity, see 11 U.S.C. § 543, the omission seems significant.**
>
> This significance is enhanced when one compares the rights or interests of the entities identified in § 1109(b) with the rights of a pre-petition receiver. Such an appointment does not deprive the debtor of its ownership of the property over which the receiver is given authority and the receiver does not generally take title to that property. Instead, it is the receiver's duty to preserve the property for the benefit of those ultimately determined to be entitled to it. *See Matter of Willows of Coventry, Ltd.* Partnership, 154 Bankr. 959, 962 (Bankr. N.D. Ind. 1993). The entities listed in § 1109(b) have very different interests in the bankruptcy proceeding and the assets subject to it. The interest of the debtor is obvious. It is the entity subject to the proceeding and the owner of the assets. In one fashion or another, creditors and equity security holders have a claim upon these assets, whether on account of a pre-petition debt or some type of ownership interest, which may be altered or restructured in the

> reorganization process. The committees are those organized under the auspices of the Bankruptcy Code to speak for their creditor or equity security holder constituents and the trustee is the one charged with the administration of case and the bankruptcy estate.
>
> This court's suspicion that a pre-petition receiver is not a party in interest is reinforced when one considers the impact of a bankruptcy proceeding on a pre-petition receiver and the receiver/custodian's resulting obligations. **The statutory directive is to cease administration**, 11 U.S.C. § 543(a), **deliver property to the trustee**, 11 U.S.C. § 543(b)(1), **and account for all property**, 11 U.S.C. § 543(b)(2). **The import of § 543 is clear**. Whether characterized as having been superseded, *In re 245 Associates, LLC*, 188 Bankr. 743, 748 (Bankr. S.D.N.Y. 1995); *In re Dressler Producing Corp.*, 262 F. 257, 260 (2d Cir. 1919), terminated, In re *Northgate Terrace Apartments, Ltd.,* 117 Bankr. 328, 331 (Bankr. S.D. Ohio 1990), deactivated, *In re Dill, 163 Bankr. 221, 225* (E.D. N.Y. 1994), or devoid of power, *In re Broadmoor Enterprises Corp.*, 84 Misc. 2d 120, 374 N.Y.S.2d 1013, 1016 (N.Y. Sup. 1975), the conclusion is the same. The receivership is effectively over and done with; it has come to an end. Control over and decisions concerning the receivership's assets "become the domain of the bankruptcy court", *In re Sundance Corp., Inc.*, 149 Bankr. 641 (Bankr. E.D. Wash. 1993), and its authority is "paramount and exclusive." *Taylor v. Sternberg*, 293 U.S. 470, 472, 55 S. Ct. 260, 261, 79 L. Ed. 599 (1935); *In re Cook*, 101 F.2d 394, 398 (7th Cir. 1938), *cert. denied, Fahey v. Cook*, 306 U.S. 642, 59 S. Ct. 583, 83 L. Ed. 1042 (1939). **Nothing remains for the pre-petition receiver to do except to comply with § 543. While it may have the opportunity to seek to be relieved of those obligations either directly, through § 543(d), or indirectly, through § 305, if those efforts are not successful, the custodian's only remaining option is compliance.** To allow anything more, under the rubric of a party in interest, would be to continue to recognize an entity which effectively should no longer exist and which is supposed to have ceased to function. In light of the foregoing, this court concludes that a pre-petition receiver, who has not been relieved of the obligation to comply with § 543, is not a party in interest.

193 B.R. At 501-502 (emphasis added). Having already made clear the limit of a receiver's power under the Bankruptcy Code, the court focused on the statutory analysis of <u>standing</u>:

> The reorganization of a corporation in bankruptcy is a matter between the corporation and its stockholders on the one hand, and its creditors on the other. … Consequently, to qualify as a party in interest requires more than merely being interested in the outcome of the bankruptcy. It requires a direct legal interest in the case. … Given this prerequisite, it is doubtful that a pre-petition receiver qualifies as a party in interest. **The receiver has no rights in or claim to the debtor's assets to be adjusted or restructured by the proceeding.**

> Even if a pre-petition receiver would be a party in interest within the scope of § 1109(b), this is not enough to give him standing, under § 1112(b), to seek conversion or dismissal of this case. "To have standing to invoke a statute, **you must be one of the persons whom the statute is intended to protect**."

193 B.R. at 503 (emphasis added).

After this careful reasoning, the court ruled that the receiver did not have a *personal stake* in debtor's assets and therefore had no standing to seek dismissal under Section 1112. Similarly, the Petitioning Creditors believe that the Receiver, whose rights are identified and limited by Section 543, has no interest sufficient to oppose an involuntary petition under Section 303, to seek damages under Section 303(i) or to obtain sanctions as the result of the filing of an involuntary petition under Rule 9011.

The 5th Circuit Court of Appeals has also observed that the Bankruptcy Code does not provide authority for a state court receiver to oppose an involuntary bankruptcy and that fees for doing so should be denied: *Szwak v. Earwood* (*In re Bodenheimer, Jones, Szwak, & Winchell L.L.P.*), 592 F.3d 664 (5th Cir. 2009). In that case, the 5th Circuit made plain that opposing an involuntary petition was beyond the scope of a custodian's federal statutory authority and that the custodian, in that case Dale Earwood, could not be compensated for doing so:

> The record indicates that once Szwak had filed the involuntary petition for bankruptcy, Earwood focused his efforts on opposing the bankruptcy. Indeed, all of his attorneys' fees, which comprise more than half of the amount in controversy, stem from opposing the bankruptcy. **However, nowhere in the relevant bankruptcy statutes does it state that a superseded custodian is authorized to oppose a bankruptcy petition or to employ the estate's resources in doing so.** Indeed, as mentioned above, the statute governing a superseded custodian's post-petition duties states explicitly that **unless the custodian is expressly authorized by the bankruptcy court to continue in the administration of the estate, the custodian is restricted to delivering all property to the trustee and filing an accounting of all property that came into the custodian's possession**.

\*\*\*

> Earwood failed to relinquish control of the estate property until ordered to do so by the district court. Earwood also failed to file an accounting of the estate's property. **For Earwood to claim that he is entitled to compensation for the ultra vires "service" of opposing the bankruptcy when he failed to first complete his statutorily-mandated service of winding up the estate borders on the absurd**.

592 F.3d 664, 671 (5th Cir. 2009) (emphasis added).

Thus the highest level court in the United States that has considered the issue has established that the Receiver's rights and duties are defined *and limited* by Section 543(a) of the Bankruptcy Code and, indirectly, Section 305 of the Bankruptcy Code.

As contemplated by the Bankruptcy Code, Section 543 deposits a custodian with knowledge of the bankruptcy in a box. While in the box, the Receiver had no choice but to stop administration of the estate, turnover property to the trustee, and render an accounting. Congress' critical use of the word "shall" in Section 543(b) tied the Receiver's hands: the Receiver had an affirmative duty to "file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian" (543(b)(2)) and to forbear from making "make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property." (543(a)) On the other hand, the Receiver had the opportunity to become freed from this box in one of two methods: seek abstention under Section 305[1], or request to be relieved of its duties

---

[1] Of course, until the Court rules, even a Motion under Sections 305 or 543(d) do not relieve a custodian of the obligation to file an accounting to the Court upon knowledge of the bankruptcy case. This was the accounting the Receiver never bothered to file in this case.

under Section 543(d).

Notwithstanding its confinement in the Section 543 box, the Receiver in this case took it upon itself, as if the Debtor, to file a Motion to Dismiss. This was an action that the 5th Circuit has specifically ruled the Receiver was not authorized to do. The 5th Circuit has stated that under these circumstances, a request to be compensated for these *ultra vires* services "borders on the absurd."

As an important matter of federal policy, any argument that the written terms of the order appointing the Receiver in the Circuit Court case or those of any state law provide sufficient standing must fail. The definitions of the Bankruptcy Code are expressions of Congress that must be interpreted on a federal level. To say that a custodian is a debtor is internally inconsistent, as Section 101(10) defining the term "custodian" refers several times to the receiver relative to the debtor. Moreover, to allow nonbankruptcy statutes or orders to grant substantive bankruptcy rights would defeat a uniform application of bankruptcy provisions, violate the Supremacy Clause of the U.S. Constitution and needlessly complicate the inquiry into a custodian's rights or obligations. Federal courts should not be required to search through state statutes or state court orders to ascertain a custodian's rights and duties: those are set forth clearly and unambiguously in the Bankruptcy Code.[2]

Certainly, to allow state court orders to impact interpretation of federal statutes would lead to untenable results. For example, a state court (or state legislature) could not legitimately enact a

---

[2] Moreover, any provision in the Order appointing the Receiver that purported to grant the Receiver management powers over the Debtor must be interpreted as being intended to assist the Receiver in his duties as fiduciary over the state court estate, not as permitting the Receiver to don the hat of "the Debtor" for federal bankruptcy purposes. To so permit would re-write the Bankruptcy Code and negate Congress' intent to limit a custodian's powers by including the "may not" prohibition in Section 543(a) and the "shall" directive in Section 543(b).

provision that excuses a state court appointed receiver from complying with the obligations imposed by Section 543 of the Bankruptcy Code. To do so would allow a state court to establish federal procedures absent approval or consent of Congress.

Congress knew well how to allow state laws to intervene in a federal bankruptcy procedures. *See e.g.,* 11 U.S.C. § 522(b)(1), allowing state legislatures the right to opt out of permitting their residents the right to use the exemptions provided in Section 522(d). Moreover, certain provisions of the instant Receivership Order, for example that upon the Receiver's filing of a voluntary petition in bankruptcy the Receiver would be entitled to continue as debtor in possession, are wholly inconsistent with the Section 543 mandates described above and must be disregarded on the federal level. *See In re Roxwell Performance Drilling, LLC*, No. 13-50301-RLJ-11, 2013 Bankr. LEXIS 5345 (Bankr. N.D. Tex. Dec. 20, 2013) ("The triggering statute here, § 543, by requiring turnover to the trustee, contemplates that the receiver as custodian is an entity separate from the trustee or debtor in possession.") Finally, even the provisions in the Order appointing the Receiver that would have sought to displace Debtor's management do not prevent such management from operating as a debtor on the federal level. *See In re Orchards Vill. Invs*., LLC, 405 B.R. 341, 349 (Bankr. D. Or. 2009) ("a state court receivership proceeding cannot be used to preclude a debtor from seeking federal bankruptcy protection, in spite of the broad authority granted to receivers in their appointment orders, such as the Appointment Order in this case. ***Allowing terms dictated in a state receivership or insolvency proceeding to determine the availability of federal bankruptcy relief is fundamentally inconsistent with the constitutional grant to Congress of the right to enact uniform laws on the subject of bankruptcy***." (emphasis added)

These are the fundamental legal arguments that the Petitioning Creditors have already advanced to this court. Moreover, Petitioning Creditors believe that if called upon to do so, both the 4th Circuit Court of Appeals and the United States District Court of Maryland are far more likely to follow the 5th Circuit's ruling in *Szwak* than the outlier ruling of the Kansas Bankruptcy Court in *Starlite Houseboats,* 426 B.R. 375 (Bankr. D. KS 2010) (which nevertheless still declined to award any compensation to a state court receiver). The Bankruptcy Code simply does not allow the Receiver to seek *any* rights under Section 303, either to contest an involuntary bankruptcy petition or to seek damages upon dismissal of an involuntary petition. Therefore, the request for sanctions must also be denied as fruit of the poisonous tree: if the Receiver was not authorized to oppose the involuntary petition then it cannot complain that the filing of the involuntary petition was done for an improper purpose and therefore cannot obtain sanctions.

All of these crucial legal arguments must be resolved before this Court should allow the Receiver to obtain intrusive, redundant and oppressive discovery into the financial conditions of the Petitioning Creditors and their counsel. Accordingly, all discovery in this matter should be stayed until this Court rules that Section 543 did not define and limit the rights of the Receiver in this case.

### B. The Receiver Has Unclean Hands And Therefore Must Be Denied Both Discovery And Sanctions

A party with unclean hands must be denied sanctions. *See In re Mabone*, 471 B.R. 534 (Bankr. E.D. Mich. 2012) (motion for sanctions denied due to movant's lack of clean hands in the bankruptcy case). Here, the repeated wrongful acts by the Receiver and his counsel must bar the award of any sanctions. The following is a list of the utter lawlessness exhibited by the Receiver and its counsel:

11

a. Failure to disclose the controlling case of *Mintec Corp. v. Miton*, 392 B.R. 180 (D. Md. 2008) and the Maryland Corporation and Associations Code Section 3-515 which, if disclosed and followed, would have lead this Court to inquire whether Trinity's filing of the involuntary petition could reasonably be described as a winding up activity of the forfeited corporation. This failure to disclose, coupled with the out-of-context admission of an ambiguous statement of corporate activity culled from Trinity's deposition transcript, would be a sufficient bad act to deny all compensation in this case and likely lead to an award of sanctions against both the Receiver and his counsel.[3]

b. Citing out-of-jurisdiction authority that dismissal of an involuntary petition under Bankruptcy Code Section 305 are grounds to support an award of fees, when the controlling case of *Koffman v. Osteoimplant Tech.*, 182 B.R. 115 (D. Md. 1995) states plainly that "After the bankruptcy court abstains from jurisdiction over an involuntary petition pursuant to section 305(a)(1), the court may not then award damages or impose sanctions for the filing of that petition under section 303(i). 182 B.R. 115, 127.

c. Continuing to insist that David Woody's claim is barred in part due to the passage of the Maryland statute of limitations, notwithstanding the undisputed evidence that the Debtor acknowledged the debt within the three years before the Petition Date and the controlling Maryland authorities establishing that such acknowledgment removes the bar of the statute of limitations. Petitioning

---

[3] The Petitioning Creditors' unresolved Motion for Reconsideration based upon Mr. Brooks' ethical misconduct is also grounds to stay discovery under the analysis set forth *supra*.

Creditors' Exhibits 17, 21, 23. *See, e.g., Allied Funding v. Huemmer,* 96 Md. App. 759, 766 (1993), *citing McMahan v. Dorchester Fertilizer Co.*, 184 Md. 155, 157, 40 A.2d 313 (1944).

d. Refusing to produce the written agreement between Trinity and Fort Howard Management Services, LLC until *after* the Petitioning Creditors needed to file a Motion in Limine.

e. Refusal to observe *any* of the requirements imposed upon a custodian by Section 543 of the Bankruptcy Code.

f. Service of Notices of Depositions upon the Petitioning Creditors when depositions have already been taken of these parties and without seeking a stipulation from counsel as required by the applicable federal and bankruptcy rules of civil procedure.

g. In the State Court Case, filing documents without service upon counsel, Trinity and Yeargin, notwithstanding that counsel had entered an appearance in the case. *See* the attached Certificates of Service and other documents filed with the State Court, Exhibit "B", pages 3-4, 6-7, 19-20, 26-27.

h. In the State Court Case, sending at least one letter to the judge and referring to bankruptcy court matters without sending a copy of that letter to counsel. Exhibit "B", pages 1-2.

i. In the State Court Case, misleading the state court into believing that the automatic stay had terminated before entry of an order by this Court dismissing the case, in violation of Bankruptcy Rules 5003 and 9021. *See also In re JRG Properties LLC,* 2013 Bankr. LEXIS 2158 *; 69 Collier Bankr. Cas. 2d (MB)

1417; 57 Bankr. Ct. Dec. 285; 2013 WL 2318856 (Bankr. C.D. CA 2013) (automatic stay remains in place until entry of order dismissing case). *See* Exhibit "B", page 12.

j. In the State Court Case, making a number of references to the bankruptcy proceedings, out of context, and without service or notice upon counsel, Trinity or Yeargin. Exhibit "B", pages 9, 12, 15, 16.

k. In the State Court Case, filing schedules without even acknowledging the *allegedly disputed* claims of Trinity and Carlos Yeargin. Exhibit "B", pages 22-27. These omissions are particularly galling, as by the time the Receiver signed these Schedules on September 5, 2018, he had *actual knowledge* of documentation supporting the claims of both Trinity and Mr. Yeargin based on documentation that was admitted into evidence at the hearing to consider dismissal of the involuntary petition. *See, e.g.,* Exhibit 1, more than 100 pages of documentation evidencing Mr. Yeargin's unpaid claim; Exhibits 4 and 5 regarding Trinity's claim; Exhibit 17, a list of payables sent by Timothy Munchell that included Trinity's claim; and Exhibit 21, that stated unequivocally that Trinity held a claim against the Debtor. The Receiver's omission of these claims, as well as his refusal to send notice of the Schedules to either Mr. Yeargin, Trinity or counsel, evidence the ongoing lack of candor and transparency that motivated the Petitioning Creditors to seek federal jurisdiction in the first instance as authorized by Section 303 of the Bankruptcy Code.

Enough is enough. The Receiver has acted lawlessly in this case from the very beginning and has unclean hands in the most classic sense of that doctrine. As a result, all further relief that the Receiver requests in this case, damages, sanctions and discovery, should be denied.

### C. The Discovery Requests Are Needlessly Intrusive And Vexatious

If these oppressive discovery requests are allowed to stand, then any time a party seeks to obtain sanctions against any other person then, even before entry of an order stating that such sanctions are appropriate, the party seeking sanctions will be able to obtain tax returns, financial data and other intrusive information concerning that person's financial condition. For an example that the Receiver may find uncomfortable, if the Petitioning Creditors were to seek sanctions due to for Receiver's failure to disclose the controlling case of *Mintec* concerning the litigation rights of a business winding up its affairs, then the Petitioning Creditors may also seek the same intrusive and oppressive discovery that the Receiver now seeks. Income tax returns for Mr. Gray, Gray & Associates, LLC, Mr. Brooks, Whiteford Taylor & Preston and all of its partners would become fair game. It is for this reason that in determining whether to award fees, the 10th Circuit Court of Appeals determined that ability to pay may be a factor in the amount of a damage award, but the court must first determine whether any damage award should be made at all. *See Roth v. Green,* 466 F.3d 1179 (10th Cir. 2006).

The chilling effect of this kind of discovery on attorneys would render the practice of law impossible. If any attorney knew that simply filing a document with a court would subject them, without prior notice and hearing, to the need to divulge all of their financial condition upon the whim of an opposing attorney then certainly no attorney could practice law. This cannot be just. Neither counsel nor the Petitioning Creditors have had even the opportunity to argue the merits of the dispositive motion based on the abundant authorities cited previously and in this Motion. Under these circumstances it is egregious in the extreme that a state court appointed Receiver

would have the ability to obtain this kind of intrusive discovery simply upon the signing of a request by its attorney.

To the contrary, these discovery requests are a malevolent effort by the Receiver and its attorney to drive up the costs of litigation and damage the Petitioning Creditors and their attorney. As already shown to this Court, the Receiver and its counsel have conducted this litigation without any candor to this Court and continue maliciously to seek to damage the Petitioning Creditors and their attorney.

If this court permits discovery, it should be limited in duration and scope. The scope of the discovery is especially broad as no party has advanced any inability to pay argument and any such argument is premature before this Court would actually indicate an intent to impose sanctions. Moreover, the information sought is particularly personal and, if required to be produced, susceptible to damaging the producing party.

Furthermore, the depositions of Ronald J. Drescher and Drescher & Associates, P.A., if allowed at all, must be limited in scope to those matters which could not implicate the attorney/client privilege, the work product privilege, or any financial information of the deponents. Additionally, the request for copies of insurance policies is without any basis. Finally, if the Petitioning Creditors and their counsel are required to produce all documents to be introduced at trial the Receiver should be required to do the same, and this court should establish a scheduling order to promote the orderly conduct of any proceeding in the event this Court does not otherwise previously dispose of this matter.

CERTIFICATION: undersigned counsel hereby certifies that it made a good faith effort to resolve the issues raised in this Motion prior to the filing of this Motion.

WHEREFORE, Petitioning Creditors and undersigned counsel respectfully request that this Court enter its Order:

A. Staying all discovery until resolution of the dispositive motions filed by Petitioning Creditors;

B. Denying discovery due to the unclean hands of Receiver and its attorney;

C. Limiting the scope of discovery within the Court's discretion;

D. Granting such other and further relief as this Court deems just and proper.

*/s/Ronald J. Drescher*
RONALD J. DRESCHER
Bar No. 08712
4 Reservoir Circle, Suite 107
Baltimore, MD 21208
(410) 484-9000

Counsel for the Petitioning Creditors

<u>CERTIFICATE OF SERVICE</u>

  I HEREBY CERTIFY that on this 22nd day of October, 2018, I served a copy of the foregoing document:

<u>by the Court's ecf system upon:</u>

Todd Michael Brooks tbrooks@wtplaw.com, rodom@wtplaw.com

Ronald J Drescher ecfdrescherlaw@gmail.com, ecf1drescherlaw@gmail.com, ecf2drescherlaw@gmail.com, ecf@drescherlaw.com, myecfdrescher@gmail.com, notices@nextchapterbk.com

Ronald J Drescher ecfdrescherlaw@gmail.com, ecf1drescherlaw@gmail.com, ecf2drescherlaw@gmail.com, ecf@drescherlaw.com, myecfdrescher@gmail.com, notices@nextchapterbk.com

Ronald J Drescher ecfdrescherlaw@gmail.com, ecf1drescherlaw@gmail.com, ecf2drescherlaw@gmail.com, ecf@drescherlaw.com, myecfdrescher@gmail.com, notices@nextchapterbk.com

US Trustee - Greenbelt USTPRegion04.GB.ECF@USDOJ.GOV

               */s/Ronald J. Drescher*
               RONALD J. DRESCHER