

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**at Greenbelt**

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| Ft. Howard Development, LLC, | : | Case No.: 18-18061-WIL |
| | : | Chapter 11 (Involuntary) |
| | : | |
| Alleged Debtor. | : | |

## MEMORANDUM OPINION

Before the Court are the "Motion and Memorandum by Petitioning Creditors to Vacate Order Dismissing Case or, in the Alternative, to Vacate Bar to Refiling; or, in the Alternative, to Decline to Award Damages Upon Dismissal of Involuntary Bankruptcy Petition" (the "Motion to Vacate") and the Opposition thereto filed by Gray and Associates, LLC, the state court receiver for the above-captioned Alleged Debtor (the "Receiver"). The Court has considered the pleadings and finds that a hearing would not aid the decisional process. *See* Local Bankruptcy Rule 9013-1(b)(4). For the following reasons, the Motion to Vacate is denied.

**I.   Background**

By way of brief background, this involuntary case was commenced on June 14, 2018, upon the filing of a Chapter 11 Involuntary Petition by David L. Woody ("Woody"); Zarella

1

Contractors, LLC ("Zarella"); and Trinity Protection Services, Inc. ("Trinity") (together, all three petitioning creditors shall heretofore be referred to as the "Petitioning Creditors"). The Receiver filed a Motion to Dismiss the Involuntary Bankruptcy Petition on June 19, 2018 (the "Motion to Dismiss"). The Motion to Dismiss alleged, among other things, that that the Involuntary Petition was filed in bad faith in an attempt to thwart sale proceedings in the Alleged Debtor's ongoing state court receivership case, and that the Petitioning Creditors failed to meet the statutory criteria to commence this involuntary proceeding. The Petitioning Creditors opposed the Motion to Dismiss. They then substituted Carlos Yeargen for Zarella Contractors, LLC as one of the Petitioning Creditors in an attempt to overcome some of the alleged deficiencies with the Involuntary Petition. After ancillary litigation involving the ability of the Receiver's counsel to represent it in this matter, the Court held an evidentiary hearing on the Motion to Dismiss on August 21, 2018. At the conclusion of the hearing, the Court granted the Motion to Dismiss and gave the Parties time to brief the issue of the Receiver's entitlement to damages in connection with the filing of the Involuntary Petition. The Order Dismissing Involuntary Bankruptcy Case and Temporarily Barring Further Involuntary Petitions was entered on August 23, 2018 (the "Dismissal Order"). The Dismissal Order barred each of the Petitioning Creditors from commencing, or joining in the commencement of, an involuntary bankruptcy case against the Alleged Debtor until further Order of this Court.

**II.     Analysis**

The Petitioning Creditors filed the Motion to Vacate on August 31, 2018. Relying on Fed. R. Bankr. P. 9023, the Motion to Vacate asserts that dismissal of this case was in error for three reasons: (i) Trinity was authorized to join the Involuntary Petition because it was in the

process of winding up its affairs when it was filed; (ii) if Trinity, as a forfeited Maryland Corporation, was not authorized to join the Involuntary Petition, then it could not qualify as a petitioning creditor under 11 U.S.C. § 303(b) and could therefore, join the involuntary petition under § 303(c); and (iii) the Receiver failed to submit any evidence that the Alleged Debtor had more than eleven creditors, therefore, the Involuntary Petition could have been filed by less than three petitioning creditors.  The Petitioning Creditors argue that the Court overlooked a controlling decision from this District that, had it been considered by the Court, would have led to a different result.  The Motion to Vacate also asserts that the Court should decline to award any damages to the Receiver and that the Petitioning Creditors acted in good faith so the bar to refiling should be vacated.

Fed. R. Bankr. P. 9023 (New Trials; Amendment of Judgments), which makes Fed. R. Civ. P. 59 applicable to bankruptcy cases, provides: "After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."  Fed. R. Civ. P. 59.  Reconsideration of a judgment or order after its entry is an extraordinary remedy that should be used sparingly.  *See Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).  Rule 59(e) is not a mechanism by which an "unhappy litigant" can rehash matters a court has already decided.  *In re Henning*, 420 B.R. 773, 785 (Bankr. W.D. Tenn. 2009).  Nor does Rule 59(e) entitle parties to a second bite at the apple using a new legal theory based on facts that existed at the time of the initial litigation.  *See The Hanover Ins. Co. v. Corrpro Companies, Inc.*, 221 F.R.D. 458, 460 (E.D. Va. 2004)("Simply put, Rule 59(e) does not provide a party with a mechanism to just keep filing motions with new theories until it gets it right.").  Rather, courts have recognized three grounds for amending an earlier judgment: (1) to accommodate an

intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *See Pac. Ins. Co.*, 148 F.3d at 403.

Of the three grounds to amend an earlier judgment set forth above, the only one applicable to the Motion to Vacate is number three – to prevent manifest injustice.[1] Courts have established various guidelines to be used on a case-by-case basis when seeking to establish "manifest injustice". *In re Henning*, 420 B.R. at 785. "A movant seeking Rule 59(e) relief must be able to show an error in the trial court that is direct, obvious, and observable." *Id*. "The movant must also be able to demonstrate that the underlying judgment caused them some type of serious injustice which could be avoided if the judgment were reconsidered." *Id*. "Essentially, 'a showing of manifest injustice requires that there exists a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with the applicable policy.'" *Id*. (quoting *McDaniel v. American General Fin'l. Servs., Inc.,* 2007 WL 2084277, *2 (W.D. Tenn. 2007)). Here, as set forth below, the Petitioning Creditors have failed to meet their burden under Rule 9023.

### A. Trinity's Standing as a Petitioning Creditor

Section 303(b) of the Bankruptcy Code provides, in pertinent part:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $15,775 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

---

[1] Again, although the Petitioning Creditors posit the Motion to Vacate as being premised on controlling case law not considered by the Court, they do not argue that there was an intervening change in controlling law.

> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $15,775 of such claims[.]

11 U.S.C.A. § 303(b).   This Court determined at the hearing on the Motion to Dismiss that Trinity was not eligible to be a petitioning creditor in this case because it had forfeited its right to conduct business in the State of Maryland.   *See Price v. Upper Chesapeake Health Ventures*, 995 A.2d 1054, 1059 (Md. Ct. Spec. App. 2010)("[T]he charters of ... corporations [that have failed to file an annual tax report] are repealed, annulled, and forfeited, and the powers conferred by law on the corporations are inoperative, null, and void."(quoting Md. Code Ann., Corps. & Ass'ns. § 3-503(d)).   This Court noted that unlike a limited liability company, revival of a corporation's charter does not validate acts done while the corporation's charter was forfeited.   *See id.*

The Petitioning Creditors now argue that Trinity could join in the Involuntary Petition as part of its efforts to wind down its affairs.   The Petitioning Creditors rely on the case of *Mintec Corp. v. Miton*, 392 B.R. 180 (D. Md. 2008) in which the United States District Court for the District of Maryland determined that "an action may be brought in the name of a corporation whose charter has been forfeited, without naming the director-trustees as parties, but only if the action is brought in the name of the corporation as part of a good faith liquidation or winding up of the affairs of the corporation."   *Id.* at 185; *see also* Md. Code Ann., Corps. & Ass'ns § 3-515(c). In *Mintec,* a forfeited corporation (Mintec) filed a nondischargeability complaint against a debtor in bankruptcy.   *Mintec*, 392 B.R. at 182.   At the time it filed the adversary complaint, Mintec had sold its assets to another company and had no employees but remained a corporate entity after the sale of its assets for the purposes of receiving an "earn-out" over time that would expire in 2008 and to recoup its damages.   *Id*. at 183.   Mintec filed the adversary complaint to collect on a

judgment that it had obtained against the Debtor as part of its obligations to collect any remaining company assets in order to liquidate the company and wind up its affairs.  *Id.*   The Debtor in that case (Milton) filed a motion to dismiss the complaint on the basis that Mintec's charter had been forfeited at the time that it filed the nondischargeability complaint.  *Id.*   Thereafter, Mintec revived its corporate charter but by that time, the deadline to file a nondischargeability complaint in the Debtor's bankruptcy case had passed.   The Bankruptcy Court concluded that under Maryland law, Mintec's corporate charter had been forfeited at the time it filed the adversary complaint and upon forfeiture, the directors of Mintec became trustees vested with full title to all corporate assets for purposes of liquidation.  *Id.* at 183.   Consequently, the Bankruptcy Court determined that the director-trustees of Mintec could sue or be sued in their own name as trustees or in the name of the corporation as part of their efforts to wind up Mintec's affairs but that was not what happened.  *Id.*   Rather, Mintec named itself as the plaintiff while it "was legally disabled from standing as a party plaintiff" and the Court stated that the original complaint could not be rescued by the wind-up provisions of Md. Code Ann., Corps. & Ass'ns § 3-515."  *Id.*   The District Court disagreed.   After analyzing the seemingly conflicting forfeiture and wind-up provisions of Maryland's General Corporations Article, the District Court concluded that:

> [A]n action may be brought in the name of a corporation whose charter has been forfeited, without naming the director-trustees as parties, but only if the action is brought in the name of the corporation as part of a good faith liquidation or winding up of the affairs of the corporation.

*Id.* at 185.   The District Court further stated that it could not "think of a more legitimate winding up activity than an attempt to protect one of the only significant remaining assets of a corporation." *Id*. at 187.

The facts of this case are clearly distinguishable from *Mintec*. The Petitioning Creditors neither argued nor presented any evidence prior to the Motion to Vacate to show that Trinity joined in the Involuntary Petition as part of efforts to wind up its affairs. The issue was not even raised at the hearing on the Motion to Dismiss. Instead, on August 20, 2018 – the day before the hearing – Trinity filed a "Statement of Revival of Charter for Trinity Protection Services, Inc." in which it states that Trinity has "revived its charter per the attached statement of good standing" and "to the extent necessary for this court to retain jurisdiction, Trinity will re-join the involuntary petition filed to commence this case." *See* Docket Entry No. 47.

The Motion to Vacate asserts that the Petitioning Creditors did not have the opportunity to show that Trinity filed the Involuntary Petition "as part of a good faith liquidation of winding up its affairs." The Court disagrees. It is undisputed that the Receiver challenged Trinity's eligibility to be a petitioning creditor in this case based on its corporate forfeiture. The issue was analyzed extensively in the Receiver's Reply Memorandum in support of its Motion to Dismiss, which attached excerpts of the deposition testimony of Darren Gregory Hollis, Trinity's President, as an exhibit. The attached deposition excerpt included a statement by Mr. Hollis that Trinity is an "operating entity with an intent to garner contracts in the future." *See* Ex. O, p. 34 to Docket Entry No. 22 and Receiver's Ex. No. 50. Instead of addressing Trinity's corporate standing, however, the Petitioning Creditors focused on a new theory in their responsive pleading, namely, that Trinity was a creditor of the Alleged Debtor as opposed to a related company under an alter ego theory of recovery. Thereafter, Trinity filed its Statement of Revival of Charter. Unquestionably the Petitioning Creditors had the opportunity to argue that Trinity filed the Involuntary Petition as part of its efforts to wind up its affairs to rebut the Receiver's contention

that Trinity's forfeiture rendered it ineligible to file the Involuntary Petition. They failed to do so and cannot use Rule 59(e) to pursue this alternative theory after their initial theories failed.

Nevertheless, even if the Court were to consider the Petitioning Creditor's argument that Trinity was winding up its affairs, the Motion to Vacate fails to present sufficient evidence to establish this. Mr. Hollis' post-dismissal affidavit, which was filed as an exhibit to the Motion to Vacate, does not credibly support the Petitioning Creditors' position. In seeking to clarify statements he made during his July 6, 2018 deposition in which he stated that although Trinity did not have any current contracts, he considered Trinity to be "an operating entity with an intent to garner contracts in the future," Mr. Hollis' affidavit states that he was not referring to Trinity when he was talking about future operations, but was talking about himself, his wife and her new company, which was formed in 2016 to "garner the same kinds of contracts as Trinity had performed" after the United States "began asserting tax liens against Trinity." If this were the case, there would have been no need for Trinity to revive its corporate charter on August 14, 2018. The Petitioning Creditors are offering a contrived interpretation of facts to support a new legal theory even though those facts and theories were available to them when they initially opposed the Motion to Dismiss. As stated above, Rule 59(e) is not a mechanism by which a party may continue to file motions with new theories until it gets it right. *See The Hanover Ins. Co.*, 221 F.R.D. at 460.

### B. Trinity's Eligibility to Join the Involuntary Petition Under 11 U.S.C. § 303(c).

The Petitioning Creditors next argue that because Trinity, as a forfeited Maryland Corporation, was not authorized to join the Involuntary Petition, then it could not qualify as a petitioning creditor under 11 U.S.C. § 303(b) and could therefore, join the involuntary petition as

8

a new creditor under § 303(c). As with the Petitioning Creditor's first argument, this is an entirely new legal theory that could have been pursued earlier but for litigation strategies, it was not. As stated above, this is not the purpose of Rule 59(e). Further, this argument is contrary to the plain language of § 303(c), which provides:

> After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, *other than a creditor filing under subsection (b) of this section*, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.

11 U.S.C. § 303(c) (*emphasis added*). Subsection (b) refers to the original petitioning creditors that filed the involuntary petition. Reading these provisions together, an original petitioning creditor may not join in the involuntary petition at a later date. *See* 2 Collier on Bankruptcy ¶ 303.19[1] (16th ed. 2011) ("Creditors eligible to join are those that were not petitioning creditors under section 303(b) and who hold unsecured claims that are not contingent."). The plain language of § 303(c) states that relief under that subsection is not available to those creditors "filing under subsection (b)." The Petitioning Creditor's argument would render the disqualifying language of § 303(c) meaningless if a defect in eligibility nullified a petitioning creditor's participation in the original involuntary petition so that they could be treated as a new creditor for purposes of § 303(c) after the defect was cured. Trinity, although ultimately deemed ineligible to file the Involuntary Petition, still filed the Involuntary Petition under § 303(b). Therefore, it is precluded from joining in the petition at a later date by § 303(c).

### C. The Receiver's Burden

The Petitioning Creditor's third argument is that the Receiver failed to submit any evidence that the Alleged Debtor had more than eleven creditors, therefore, they assert that the

Involuntary Petition could have been filed by less than three petitioning creditors.   At the risk of sounding like a broken record, this is another new argument that is neither based on new facts nor a change in controlling law so it could have been pursued when opposing the Motion to Dismiss. Regardless, the Petitioning Creditors have confused the burdens applicable to involuntary cases.

The Petitioning Creditors cite Fed. R. Banr. P. 1003(b), which provides:

> If the answer to an involuntary petition filed by fewer than three creditors avers the existence of 12 or more creditors, the debtor shall file with the answer a list of all creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof. If it appears that there are 12 or more creditors as provided in § 303(b) of the Code the court shall afford a reasonable opportunity for other creditors to join in the petition before a hearing is held thereon.

Fed. R. Bankr. P. 1003(b).   Based on this Rule, the Petitioning Creditors assert that that the Receiver had the burden of proving that the Alleged Debtor has twelve or more creditors.   There is no basis for this assertion.   First, Rule 1003(b) was never invoked in this case because the Receiver never filed an answer to the Involuntary Petition.   Instead, it filed the Motion to Dismiss as permitted by Fed. R. Bankr. P. 1011.   Second, even if an answer had been filed, the Involuntary Petition was filed by three creditors so there was no requirement under Rule 1003(b) for the Receiver to provide a list of creditors.   Under such circumstances, Fed. R. Bankr. P. 1007(a)(2) would have applied and the Receiver would have been required to file a list of creditors to be included on Schedules D, E/F, G, and H within seven days after entry of the order for relief.   Fed. R. Bankr. P. 1007.   Nonetheless, despite the inapplicability of Rule 1003(b), the Receiver attached a list of the creditors that received notice of the Receivership Case to the Motion to Dismiss.   *See* Ex. D to Docket Entry No. 6.   The list, which consists of twenty five creditors, was admitted into evidence at the hearing on the Motion to Dismiss and was not rebutted by the Petitioning Creditors.   As the Receiver argues in its Opposition to the Motion to Vacate, it was

because of this list of creditors that the Petitioning Creditors substituted Carlos Yeargen for Zarella as a Petitioning Creditor in order to maintain the requisite number of petitioners (three) under §303(b)(1) and presumably why Trinity revived its charter.   Had there been any doubt that the Alleged Debtor had fewer than twelve qualifying creditors, the Involuntary Petition could have been filed solely by creditor Woody.   Again, this argument fails to warrant the extraordinary relief afforded by Rule 59(e).

### D. **Finding of Bad Faith/Temporary Bar to Refiling**

The Petitioning Creditors argue that there is a presumption that bankruptcy cases are filed in good faith and that the temporary bar to refiling contained in the Dismissal Order was not proper absent a finding of bad faith.   The Court dismissed this case because the Involuntary Petition was not filed by three qualifying creditors.   The Court did not make any findings at the hearing on the Motion to Dismiss as to whether the Involuntary Petition was filed in bad faith.   Instead, the Court reserved the issue of bad faith to be determined in connection with any damages sought by the Receiver if it was determined that the Receiver had standing to request damages under § 303(i). These issues have been briefed by the parties and are the subject of other pending motions filed in this case and will be addressed in more detail in connection therewith.   In the meantime, however, the Court imposed a temporary bar to refiling another involuntary petition against the Alleged Debtor, at the Receiver's request, in order to maintain the status quo and allow the receivership proceedings to go forward.   It is undisputed that the Petitioning Creditors were forum shopping when they filed the Involuntary Petition to stop the sale of the Alleged Debtor's assets in the receivership case.   The Receiver also presented evidence that the delay in the sale proceedings in the receivership case caused by the filing of the Involuntary Petition was costly because the

Receiver was expending funds to pay security and insurance expenses to protect the receivership estate's assets pending the sale of those assets.  *See* Receiver's Ex. No. 8.

The Court's power to impose the temporary bar is based on §§ 105(a) and 349(a) of the Bankruptcy Code.   These provisions grant the Court broad authority to issue any order that "is necessary or appropriate to carry out the provisions of this title" and prevent an abuse of the bankruptcy process, including dismissing a case with prejudice.   11 U.S.C. § 105(a); *see also In re Meltzer*, 535 B.R. 803, 821 (Bankr. N.D. Ill. 2015).   The Court determined that a temporary bar was necessary and appropriate in this case after counsel for the Petitioning Creditor stated at the hearing that he had another creditor that may be interested in joining the Involuntary Petition.  Counsel made this statement *after* the Court determined that the Petitioning Creditors failed to meet the statutory criteria for commencing an involuntary case.   The timing of Counsel's statement indicated that the Petitioning Creditors were looking for another opportunity to stop the state court receivership proceedings, which would have rendered the dismissal of the instant case ineffective.   Imposing a temporary bar prevented them from doing so pending further order of this Court.   The Court notes that the Receiver has since filed a Motion to Extend Temporary Bar Prohibiting the Commencement of Further Involuntary Bankruptcy Petitions (the "Motion to Extend Temporary Bar") in which it relied on several cases where bankruptcy courts have imposed a bar on the refiling of another involuntary petition.   The Petitioning Creditors did not file an opposition to the Motion to Extend Temporary Bar.   Nevertheless, a determination of the bad faith, if any, of the Petitioning Creditors in filing the Involuntary Petition will impact the Court's determination regarding the duration of the bar on refiling.   At this time, the Court will keep the temporary bar in place to preserve the status quo pending a determination of the Petitioning Creditors' alleged bad faith.

### E. The Receiver's Entitlement to Damages

The final argument raised in the Motion to Vacate addresses whether the Alleged Debtor or the Receiver incurred damages as a result of the Involuntary Petition.   No damages were awarded in the Dismissal Order.   In fact, the Receiver's entitlement to any damages is still under consideration by the Court and will be determined after the evidentiary hearing scheduled for November 28, 2018.   Accordingly, this argument is premature and will be addressed in connection with other pending motions filed in this case.

### III.    Conclusion

For all of these reasons, the Court finds that the Motion to Vacate fails to establish a basis to warrant the extraordinary remedy of altering or amending the Dismissal Order under Rule 59(e). An Order consistent with this Memorandum will be entered contemporaneously herewith.


cc:    All Parties
       All Counsel
       United States Trustee


**END OF MEMORNDUM**